## Minnie Hull, Appellant, v. James D. Hull, Appellee.

## Gen. No. 5,984.

MARRIAGE, § 29*—*when false representations by husband as to his chastity not ground for annulment.* False representations by a man before marriage, made to his intended wife, as to his not having had intercourse with other women are not ground for annulment of the marriage by the wife.

Appeal from the Circuit Court of Kankakee county; the Hon. CHARLES B. CAMPBELL, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed January 6, 1915.

WALTER C. SCHNEIDER, for appellant.

JAMES L. DOUGHERTY and SAVARY & RUEL, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On October 25, 1913, appellee married appellant. On November 28, 1913, appellant left her husband, and on December 8, 1913, she filed this bill against her husband to annul the marriage. A demurrer to the bill by defendant was sustained, and complainant elected to abide by her bill, and it was dismissed at her costs. This is an appeal by her from said decree.

In the bill appellant alleged that she was chaste when she married appellee; that her consent to the marriage was procured by appellee by material false and fraudulent representations, in this, that he represented to her that he was a chaste person and had never had sexual intercourse with other women, and that a woman named Hall was charging him with being the father of her unborn child in order to cause him to marry her, but that he had never had sexual inter-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

course with said woman and was not the father of said unborn child. The bill averred that appellant made due inquiry regarding said statements, and that appellee repeatedly affirmed that he was innocent of said charge, and that she believed and relied upon his representations, and in reliance thereon married him; that in fact said statements were untrue, and that he had had frequent sexual intercourse with said woman named Hall, and that said Hall woman is and was at the time of said marriage pregnant with a child of which appellee is the father, and that appellee well knew these facts when he made said representations and knew that they were untrue; that the relatives of said Hall woman have threatened to prosecute him for bastardy and that appellee will be forced to pay her large sums of money under the laws of this State, and that he is a poor man and will be unable to pay such sums and also support appellee and appellant, and that since said marriage she has been informed and believes and charges the fact to be that he is the father of divers other illegitimate children, and that he fled from his former home in Kentucky to avoid prosecution for such acts. The bill further alleged that she did not know of the falseness of these representations until November 28, 1913, and she then immediately left him and ever since remained away from him; and that if she had known that appellee was the father of said unborn child and had been unchaste she would not have consented to marry him; and that he married appellant merely to protect himself against the charges of said Hall woman.

The argument for appellant is that, under the law, if a man marries a woman who is pregnant by another man, and she has concealed that fact from him, and he has not had intercourse with her before the marriage, the marriage may be annulled; and that there ought to be the same law for a man as for a woman; and that, if that rule is applied to this case, this mar-

riage should be annulled. We concur with appellant that the law should apply equally to the man and to the woman, and we hold that it does so apply equally. But the cases supposed by the argument to be the same are radically different. When a man marries a woman, not his paramour, at a time when she is pregnant by another man, which fact she has concealed from her intended husband, different courts have given two reasons why the marriage shall be held voidable. One is, that by the fact of existing pregnancy the woman is incapable of bearing a child to her husband at that time, and is unable to fully perform the contract implied in marriage. The other, and, we think, the true ground for holding the marriage voidable, is that thereby there is brought into the marriage relation, and into the home of the husband and wife, an infant which is in fact not the child of the husband, but which is presumed by the law to be his child until the contrary is established. He must suffer the child to be considered his own, though begotten by another man before marriage, or he must begin proceedings by which shame will brought upon his wife. The husband is not bound to support such a child, and its presence in the home is likely to produce great discord. This is held to be a fraud, the results of which are of the gravest character. *Reynolds v. Reynolds,* 3 Allen (Mass.) 605. If, however, some other woman is pregnant by the husband, the child is not born into the family nor brought into the home of the husband and wife, and no question of its legitimacy and right to inherit the property of the husband is involved. It is well settled in nearly all of the States of the Union that concealment or misrepresentation concerning the party's health, character, wealth, social position, previous history or habits, does not furnish sufficient cause for the annulment of the marriage, and that false representations as to the previous chastity of either party to the intended marriage are not ground for annulling

it. Tiffany on Domestic Relations, 10; 19 Am. & Eng. Encyc. of Law (2nd Ed.) 1183-1188; 26 Cyc. 899-907. These principles are laid down in numerous cases cited in the foregoing authorities, and they are equally applicable whether the false representations of chastity were made by the man or by the woman. The consequences of the birth of a bastard child outside the marriage relation are so different from the consequences of the birth of such a child within that relation that the same legal results to the marriage relation should not follow from the one as from the other. If, as is held in the authorities above cited, the fact that a woman concealed from her intended husband that she had been a prostitute would not authorize an annulment of the marriage at the suit of the husband, when he discovers that fact, no reason is perceived for the claim that the man and the woman are not, in this respect, treated equally before the law.

The decree is affirmed.

*Affirmed.*